1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICHARD D. DAVIS, III,

11          Plaintiff,              No. CIV S-11-1242 KJM DAD PS

12      vs.

13   FOLSOM CORDOVA UNIFIED        FINDINGS AND RECOMMENDATIONS
     SCHOOL DISTRICT, et al.,
14

15          Defendants.

16   _____/

17          This matter came before the court on June 22, 2012, for hearing of defendants'

18   motion to dismiss plaintiff's second amended complaint pursuant to Rule 12(b)(6) of the Federal

19   Rules of Civil Procedure.  Plaintiff Richard Davis, who is proceeding pro se in this action,

20   appeared on his own behalf.  Attorney Lynn Garcia appeared on behalf of defendants.  Oral

21   argument was heard, and defendants' motion was taken under submission.

22          Upon consideration of the briefing on file, the parties' arguments at the hearing,

23   and the entire file, the court will recommend that defendants' motion to dismiss be granted.

24                              BACKGROUND

25          Plaintiff commenced this action on May 9, 2011, by paying the required filing fee

26   and filing his original complaint.  (Doc. No. 1.)  On June 3, 2011, before a responsive pleading

had been filed, plaintiff filed an amended complaint.  (Doc. No. 8.)  On June 27, 2011, counsel for defendants filed a motion to dismiss the first amended complaint.  (Doc. No. 18.)  On February 22, 2012, the undersigned granted defendants' motion to dismiss the first amended complaint and granted plaintiff leave to file a second amended complaint.  (Doc. No. 32.)

Plaintiff filed his second amended complaint on April 27, 2012.  (Sec. Am. Compl. (Doc. No. 44-1.))  Therein, plaintiff alleges that defendant Folsom Cordova Unified School District, ("District"), and twelve individuals employed by the District who are also named as defendants, discriminated and retaliated against plaintiff and his daughter with respect to his daughter's participation in the cheerleading program at Vista del Lago High School.[1]  The second amended complaint alleges claims for retaliation in violation of the First Amendment, violation of the Equal Protection Clause of the Fourteenth Amendment, violation of the Due Process Clause of the Fourteenth Amendment and retaliation in violation of Title IX.  (Id. at 1-2.[2])

Counsel for defendants filed the motion to dismiss now pending before the court on May 17, 2012.  (MTD (Doc. No. 47.))  Plaintiff filed his opposition on June 4, 2012, (Pl.'s Opp.'n (Doc. No. 48)), and defendants filed a reply on June 14, 2012.  (Reply (Doc. No. 51.))  On June 18, 2012, plaintiff filed an unauthorized sur-reply.[3]  (Doc. No. 52.)

/////

/////

/////

/////

---

[1]  Plaintiff's daughter, who it appears has now reached the age of adulthood, is not a party to this action.  See Dagnall Decl. (Doc. No. 18-3) at 7.

[2]  Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[3]  The filing of a sur-reply is not authorized by the Federal Rules of Civil Procedure or the Local Rules.  See Fed. R. Civ. P. 12; Local Rule 230.  Nonetheless, in light of plaintiff's pro se status, the court has reviewed the sur-reply and considered it in reaching its decision on the pending motion.

1              FACTUAL ALLEGATIONS

2          The second amended complaint alleges as follows.[4]  Prior to these events,

3  plaintiff's daughter Danielle had been a decorated and accomplished cheerleader for the Vista del

4  Lago Cheerleading Squad.  (Sec. Am. Compl. (Doc. No. 44-1) at 8.)  In January of 2009, plaintiff

5  emailed John Dixon, Vista del Lago's Principal and Robert Reed, the school's Athletic Director,

6  regarding plaintiff's concerns about Darcy Amiss, the school's new Cheer Advisor, possibly

7  holding cheerleaders to higher academic standards than male athletes in other sports and

8  "threatening comments" made by Ms. Amiss to "a few of the cheer squad members."  (Id. at 9.)

9  Although Principal Dixon and Director Reed assured plaintiff that Ms. Amiss could not "make

10 good on her threat," in April of 2009, higher academic standards for cheerleaders at Vista Del

11 Lago High School were implemented.  (Id.)  As a result, an African American cheerleader, and

12 "[t]wo other girls" failed to make the team.  (Id. at 9-10.)  Plaintiff "never thought it was about

13 race but just childish behavior by Ms. Amiss."  (Id. at 9.)  Plaintiff's daughter Danielle, however,

14 did make the team.  (Id. at 10.)  Nonetheless, that same month plaintiff "filed a Title IX

15 complaint" with Principal Dixon on behalf of the three girls who failed to make the team.  (Id.)

16         On May 7, 2009, plaintiff "[a]ppealed" to Patrick Godwin, the District

17 Superintendent, with respect to his Title IX complaint.  (Id.)  Plaintiff then filed an addendum to

18 his complaint on May 21, 2009, "to include Folsom High School," a copy of which all District

19 Board Members received.  (Id.)  Superintendent Godwin responded to plaintiff's Title IX

20 complaint on June 18, 2009.  (Id.)  Having not received a satisfactory response, plaintiff filed a

21 Title IX complaint with the California Department of Education on June 23, 2009.  (Id. at 11.)

22         Approximately two weeks later plaintiff's daughter was not allowed to compete

23 for the "flyer" position on the cheerleading team and her practice time was limited by Ms. Amiss

24

25         [4] Despite the disorganized nature of plaintiff's second amended complaint, the
   undersigned has attempted to recount the factual allegations found therein in the most clear and
26 concise manner possible.

1    and Melanie Heimburg, the team's coach.  (Id.)  Plaintiff spoke with Ms. Amiss on July 8, 2009,

2    to express his concerns about the treatment his daughter had received.  (Id.)  Ms. Amiss indicated

3    that she had read plaintiff's emails to Dixon and Reed about her and "was not happy" with

4    plaintiff.  (Id.)  Ms. Amiss later sent a "hostile email" to plaintiff's wife "about [his] family."

5    (Id. at 12.)

6            Thereafter, plaintiff's daughter attended a four day cheer stunt camp at the

7    University of California, Davis, but was "not allowed to participate in stunting."  (Id.)  On July

8    30, 2009, plaintiff "filed a Title IX retaliation complaint" concerning his daughter's treatment at

9    the camp and "sent it to Dr. Dixon and Mr. Reed."  (Id. at 13.)  Sometime in the middle of

10   August, Principal Dixon informed plaintiff that he had finished his investigation and found "no

11   sign of differential treatment" at the cheer camp.  (Id.)  Dixon, however, "deliberately chose not

12   to interview the alleged victim," plaintiff's daughter, which Dixon knew "would emotionally

13   upset" plaintiff.  (Id.)

14           Although plaintiff continued to voice his concerns about how his daughter was

15   being treated, his daughter's participation in cheerleading continued to be limited.  As a result,

16   plaintiff's family refused to attend events where the cheer squad would perform because they

17   "couldn't go to the games to watch [Danielle] be publicly punished."  (Id. at 15-16.)  Although

18   plaintiff himself did attend Vista Del Lago games, he sat alone because he feared that if the

19   defendants saw other parents sitting with him their daughters would be similarly punished by

20   defendants.  (Id at 16.)  As a result, each week plaintiff sat alone at Vista Del Lago High School

21   events feeling publicly embarrassed and humiliated.  (Id.)

22           In September of 2009, plaintiff emailed a local tv station about his situation and,

23   on September 9, 2009, the station broadcasted a story "on the discrimination in Folsom, at both

24   Folsom High and Vista del Lago High."  (Id.)  According to plaintiff "viewers were outraged"

25   that the cheerleaders were required to have a 2.5 grade point average while participation in all

26   /////

4

1  other extracurricular activities at the schools required only that the student participants maintain a

2  2.0 grade point average.  (Id.)

3         On or around September 15, 2009, a varsity cheerleader was ill.  (Id.)  Instead of

4  allowing plaintiff's daughter to practice, coach Heimburg, "pulled up a junior varsity flyer,"

5  preventing plaintiff's daughter from practicing.  (Id.)  Thereafter, plaintiff sent an email to

6  Principal Dixon and Director Reed complaining about the incident.  (Id. at 16-17.)

7         Sometime in the middle of September of 2009, plaintiff's daughter emailed

8  Principal Dixon and requested a meeting with her parents, coach Heimburg and Dixon.  (Id. at

9  17.)  At the meeting, plaintiff complained that his daughter never got a chance to tell her side of

10  the story about an incident that occurred at a cheerleading camp.  (Id.)  Principal Dixon stated

11  that plaintiff's daughter could say anything she wanted but that her words "are not going to

12  change our minds."  (Id.)  That meeting represented the worst "of all of the public humiliation

13  [plaintiff] had to endure" and he never spoke to Dixon again.  (Id. at 18.)

14         Sometime in late October of 2009, the District decided to change the minimum

15  grade point average requirement for participants in cheerleading from 2.5 to 2.0 and allowed two

16  of the girls who were previously cut to rejoin the team.  (Id.)  On November 4, 2009, the

17  California Department of Education "rule[d] against" plaintiff's Title IX complaint.  (Id.)

18         On December 7, 2009, plaintiff's daughter Danielle left school early due to

19  illness.  (Id. at 19.)  Plaintiff's wife received an email from Ms. Amiss at 7:19 p.m. declaring a

20  new absentee policy and twenty-one minutes later received an email from coach Heimburg

21  stating that Danielle would be benched for the next game pursuant to the new policy.  (Id.)  As a

22  result of the benching, Danielle could not wear her cheer uniform to school on game day.  (Id.)

23  Although plaintiff "wasn't at the school to witness it," he nonetheless "knew first hand what it

24  felt like."  (Id.)  Thereafter, plaintiff's daughter quit cheerleading.  (Id. at 19.)

25         Plaintiff, however, began writing letters to the District Board of Supervisors

26  complaining about the treatment he and his daughter had received.  (Id.)  Despite their

1    knowledge that plaintiff was suffering "retaliation for speaking out on discrimination . . . . not

2    one of the individual Board Members . . . acted responsibly" and the Board failed to "speak out"

3    against the retaliation suffered by plaintiff and his daughter.  (Id. at 20-21.)

4                    LEGAL STANDARDS APPLICABLE TO DEFENDANTS' MOTION

5              The purpose of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules

6    of Civil Procedure is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp.

7    Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a

8    cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

9    Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to

10   allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v.

11   Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

12   factual content that allows the court to draw the reasonable inference that the defendant is liable

13   for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

14             In determining whether a complaint states a claim on which relief may be granted,

15   the court accepts as true the allegations in the complaint and construes the allegations in the light

16   most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v.

17   United States, 915 F.2d 1242, 1245 (9th Cir. 1989).  In general, pro se complaints are held to less

18   stringent standards than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519,

19   520-21 (1972).  However, the court need not assume the truth of legal conclusions cast in the

20   form of factual allegations.  United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th

21   Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than

22   an unadorned, the defendant-unlawfully-harmed-me accusation."  Iqbal, 556 U.S. at 678.  A

23   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

24   elements of a cause of action."  Twombly, 550 U.S. at 555.  See also Iqbal, 556 U.S. at 676

25   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

26   statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove

6

1 facts which it has not alleged or that the defendants have violated the . . . laws in ways that have

2 not been alleged."  <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>,

3 459 U.S. 519, 526 (1983).

4         In ruling on the motion, the court is permitted to consider material which is

5 properly submitted as part of the complaint, documents that are not physically attached to the

6 complaint if their authenticity is not contested and the plaintiff's complaint necessarily relies on

7 them, and matters of public record.  <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 688-89 (9th Cir.

8 2001).

9 ANALYSIS

10 I.  <u>Rule 8</u>

11         The minimum requirements for a civil complaint in federal court are as follows:

12     A pleading which sets forth a claim for relief . . . shall contain (1) a
short and plain statement of the grounds upon which the court's
13     jurisdiction depends . . . , (2) a short and plain statement of the
claim showing that the pleader is entitled to relief, and (3) a
14     demand for judgment for the relief the pleader seeks.

15 Fed. R. Civ. P. 8(a).

16         Here, in dismissing plaintiff's first amended complaint with leave to amend, the

17 court advised plaintiff that the first amended complaint failed to comply with the requirements of

18 Rule 8, specifically instructing plaintiff that the first amended complaint did "not allege facts that

19 state[d] the elements of his claims plainly or succinctly."  (Doc. No. 32 at 4.)  Despite that

20 admonishment, plaintiff's second amended complaint also fails to allege facts that state the

21 elements of plaintiff's claims plainly or succinctly.

22         In this regard, the second amended complaint is a disorganized mishmash of

23 factual narrative and unsupported conclusory argument with legal terminology and authority

24 /////

25 /////

26 /////

7

1  repeated at various points throughout the document.[5]  The second amended complaint names

2  thirteen defendants and raises four claims.  With respect to three of the four claims, it is entirely

3  unclear which claim plaintiff is asserting against which defendant.  Moreover, instead of each

4  claim being set forth in a single unique location, each claim is discussed at multiple locations

5  throughout the second amended complaint.[6]

6          Although the Federal Rules of Civil Procedure adopt a flexible pleading policy, a

7  complaint must give the defendant fair notice of the plaintiff's claims and must allege facts that

8  state the elements of each claim plainly and succinctly.  Fed. R. Civ. P. 8(a)(2); Jones v.

9  Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  "A pleading that offers 'labels

10  and conclusions' or 'a formulaic recitation of the elements of cause of action will not do.'  Nor

11  does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual

12  enhancements.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555, 557).  A plaintiff

13  must allege with at least some degree of particularity overt acts which the defendants engaged in

14  that support the plaintiff's claims.  Jones, 733 F.2d at 649.

15          Because plaintiff's second amended complaint fails to allege facts that state the

16  elements of his claims plainly or succinctly, it could be dismissed for this reason alone.

17  II.  42 U.S.C. § 1983

18          With respect to plaintiff's claims alleging violations of the United States

19  Constitution, a litigant who complains of a violation of a constitutional right does not have a

20  cause of action directly under the United States Constitution.  Livadas v. Bradshaw, 512 U.S.

21  107, 132 (1994) (affirming that it is 42 U.S.C. § 1983 that provides a federal cause of action for

22

23      [5]  The disjointed nature of the second amended complaint may stem, in part, from
24  plaintiff's belief that "[t]his Country has never seen a case similar to mine, so there is no Federal
   Authority to look to."  (Sec. Am. Compl. (Doc. No. 44-1) at 5.)

25      [6]  For example, the second amended complaint has captions for the discussion of the
   "First amendment" on pages twelve, fourteen and twenty-two, while the caption "Equal
26  Protection of the Law" is found on pages five, fourteen and twenty-two.

8

1   the deprivation of rights secured by the United States Constitution); Chapman v. Houston

2   Welfare Rights Org., 441 U.S. 600, 617 (1979) (explaining that 42 U.S.C. § 1983 was enacted to

3   create a private cause of action for violations of the United States Constitution); Azul-Pacifico,

4   Inc. v. City of Los Angeles, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action

5   directly under the United States Constitution.").

6                  Title 42 U.S.C. § 1983 provides that,

7              [e]very person who, under color of [state law] ... subjects, or causes
               to be subjected, any citizen of the United States ... to the
8              deprivation of any rights, privileges, or immunities secured by the
               Constitution and laws, shall be liable to the party injured in an
9              action at law, suit in equity, or other proper proceeding for redress.

10  The statute requires that there be an actual connection or link between the actions of the

11  defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Dep't of

12  Soc. Servs. City of New York, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A

13  person 'subjects' another to the deprivation of a constitutional right, within the meaning of §

14  1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform

15  an act which he is legally required to do that causes the deprivation of which complaint is made."

16  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

17                 The court notes that although plaintiff has named thirteen defendants in his second

18  amended complaint, many of those defendants are referred to only in passing therein.  For

19  example, with respect to defendant Director Reed the second amended complaint alleges that

20  Reed:  (1) received a complaint from plaintiff in January of 2009 regarding Ms. Amiss; (2)

21  allowed "rules to be changed"; (3) received emails from plaintiff which Ms. Amiss was latter

22  allowed to read; (4) had a discussion with plaintiff concerning his daughter's limited practice

23  time and a hostile email plaintiff received from Ms. Amiss; (5) received plaintiff's Title IX

24  retaliation complaint on July 30, 2009; and (5) gave plaintiff's youngest daughter an incorrect

25  /////

26  /////

1    grade before Christmas of 2010, which was corrected after the Christmas break.[7] (Sec. Am.

2    Compl. (Doc. No. 44-1) at 9-26.)  Plaintiff, however, fails to specifically allege how Director

3    Reed, or any other named defendant, deprived plaintiff of a right secured by the Constitution or

4    laws of the United States.

5            In order to state a cognizable claim under § 1983 the plaintiff must allege facts

6    demonstrating that he was deprived of a right secured by the Constitution or laws of the United

7    States and that the deprivation was caused by an individual acting under color of state law.  West

8    v. Atkins, 487 U.S. 42, 48 (1988).  It is the plaintiff's burden in bringing a claim under § 1983 to

9    allege, and ultimately establish, that each of the named defendants were acting under color of

10   state law when they deprived him of a federal right.  Lee v. Katz, 276 F.3d 550, 553-54 (9th Cir.

11   2002).  Moreover, supervisory personnel are generally not liable under § 1983 for the actions of

12   their employees under a theory of respondeat superior and, therefore, when a named defendant

13   holds a supervisorial position, the causal link between him and the claimed constitutional

14   violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979);

15   Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

16           Similarly, in his second amended complaint plaintiff alleges that defendants Short,

17   Stanley, Reinking, Shaw, and Benton, all members of the Folsom Cordova Unified School

18   District Board of Education ("Board") sued in their individual capacities, "knowingly

19   acquiesced" to violations of plaintiff's rights.  (Sec. Am. Compl. (Doc. No. 44-1) at 22-23.)

20   Such, vague and conclusory allegations concerning the involvement of official personnel in civil

21   rights violations are not sufficient to state a cognizable claim.  See Ivey v. Board of Regents, 673

22   F.2d 266, 268 (9th Cir. 1982).

23           Finally, as noted above, in his second amended complaint plaintiff has also named

24   as a defendant the Folsom Cordova Unified School District, (Sec. Am. Compl. (Doc. No. 44-1)

25

26           [7] Plaintiff's youngest daughter is also not a party to this action.

10

1   at 1), and seeks relief in the form of compensatory damages.  (Id. at 27-28.)  However, "school

2   districts in California are immune from § 1983 claims by virtue of Eleventh Amendment

3   immunity."  Corales v. Bennett, 567 F.3d 554, 573 (9th Cir. 2009).  See Cole v. Oroville Union

4   High School Dist., 228 F.3d 1092, 1100 n.4 (2000); Belanger v. Madera Unified Sch. Dist., 963

5   F.2d 248, 254 (9th Cir. 1992).

6   In general, the Eleventh Amendment bars suits against a state, absent the state's

7   affirmative waiver of its immunity or congressional abrogation of that immunity.  Pennhurst v.

8   Halderman, 465 U.S. 89, 98-99 (1984); Simmons v. Sacramento County Superior Court, 318

9   F.3d 1156, 1161 (9th Cir. 2003); Yakama Indian Nation v. State of Wash. Dep't of Revenue, 176

10   F.3d 1241, 1245 (9th Cir. 1999); see also Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of

11   Higher Educ., 616 F.3d 963, 967 (9th Cir. 2010) ("The Eleventh Amendment bars suits against

12   the State or its agencies for all types of relief, absent unequivocal consent by the state.").

13   To be a valid waiver of sovereign immunity, a state's consent to suit must be

14   "unequivocally expressed in the statutory text."  Lane v. Pena, 518 U.S. 187, 192 (1996).  See

15   also Pennhurst, 465 U.S. at 99; Yakama Indian Nation, 176 F.3d at 1245.  "[T]here can be no

16   consent by implication or by use of ambiguous language."  United States v. N.Y. Rayon

17   Importing Co., 329 U.S. 654, 659 (1947).  Courts must "indulge every reasonable presumption

18   against waiver," Coll. Sav. Bank v. Florida Prepaid, 527 U.S. 666, 682 (1999), and waivers

19   "must be construed strictly in favor of the sovereign and not enlarged beyond what the [statutory]

20   language requires."  United States v. Nordic Village, Inc., 503 U.S. 30, 34 (1992) (citations,

21   ellipses, and internal quotation marks omitted).  "To sustain a claim that the Government is liable

22   for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously

23   to such monetary claims."  Lane, 518 U.S. at 192.  The Ninth Circuit has specifically recognized

24   that "[t]he State of California has not waived its Eleventh Amendment immunity with respect to

25   claims brought under § 1983 in federal court, and the Supreme Court has held that § 1983 was

26   not intended to abrogate a State's Eleventh Amendment immunity."  Brown v. California Dept.

1    of Corrections, 554 F.3d 747, 752 (9th Cir. 2009) (quoting Dittman v. California, 191 F.3d 1020,

2    1025-26 (9th Cir. 1999)).

3    III.  First Amendment Claim

4            The First Amendment forbids government officials from retaliating against

5    individuals for speaking out.  Hartman v. Moore, 547 U.S. 250, 256 (2006).  To recover under §

6    1983 for such retaliation in violation of the First Amendment, a plaintiff must allege and prove:

7    (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse

8    action by the defendant that would chill a person of ordinary firmness from continuing to engage

9    in the protected activity; and (3) there was a substantial causal relationship between the

10   constitutionally protected activity and the adverse action.  See Pinard v. Clatskanie School Dist.

11   6J, 467 F.3d 755, 770 (9th Cir. 2006).

12           Here, with respect to his First Amendment retaliation claim, plaintiff alleges in his

13   second amended complaint that he "stood up for other children in his community" and was

14   "bullied by school administration and discriminated against" in retaliation for his complaints to,

15   and about, school officials.  (Sec. Am. Compl. (Doc. No. 44-1) at 5.)  "[T]he right to criticize

16   public officials is clearly protected by the First Amendment."  Jenkins v. Rock Hill Local School

17   Dist., 513 F.3d 580, 588 (6th Cir. 2008).

18           However, with respect to the alleged adverse action element, plaintiff's second

19   amended complaint alleges that it was his daughter who suffered the alleged adverse action, not

20   plaintiff.  Indeed, plaintiff acknowledges this when he alleges:

21           I am not trying to defend my daughter's rights, I am merely stating,
             that the defendants violate **my rights**, when they intentionally
22           violate my daughter's rights, because they violate her rights, in
             retaliation for me speaking out on discrimination, in order to
23           mentally abuse me for my Freedom of Speech.

24   (Sec. Am. Compl. (Doc. No. 44-1) at 6) (emphasis in original.)

25           In this regard, plaintiff alleges that the "defendants go through my daughter to get

26   to me and not only violate my rights, but my daughter's right's as well," that the defendants

                                                    12

1  could "not personally touch" plaintiff "unless they go through [his] daughter to do so" and that in

2  doing so the defendants intentionally inflicted upon plaintiff "mental abuse causing mental

3  anguish."  (Id.)  Similarly, plaintiff alleges that defendants Ms. Amiss and coach Heimburg

4  deprived plaintiff of his "emotional tranquility" by not allowing his daughter to participate at

5  cheer camp, (id. at 12), and that defendant Principal Dixon publicly embarrassed and humiliated

6  plaintiff "week, after week" and deprived plaintiff of his "emotional tranquility" by forcing him

7  to "watch [his] daughter be publicly punished for [his] sins."  (Id. at 14.)

8          While it is clear from reading the allegations found in the second amended

9  complaint that plaintiff experienced emotional distress over the perceived mistreatment of his

10  daughter, the second amended complaint fails to allege that plaintiff himself suffered any actual,

11  direct, adverse action at the hands of any defendant.  Accordingly, the second amended complaint

12  fails to allege the necessary elements of a First Amendment retaliation claim.  See D.B. ex rel.

13  Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012) ("To establish a First Amendment

14  retaliation claim a plaintiff must first prove that (1) he . . . engaged in constitutionally protected

15  conduct, (2) he . . . was subjected to an adverse action by the defendant, and (3) the protected

16  conduct was a substantial or motivating factor in the adverse action."); Springer v. Durflinger,

17  518 F.3d 479, 483 (7th Cir. 2008) ("To prevail on their § 1983 retaliation claim, the parents need

18  to prove (1) that they were engaged in constitutionally protected speech; (2) that public officials

19  took adverse actions against them; and (3) that the adverse actions were motivated at least in part

20  as a response to the plaintiffs' protected speech."); Burch v. Regents of University of California,

21  433 F. Supp.2d 1110, 1130 (E.D. Cal. 2006) ("[T]o establish a prima facie case of retaliation

22  under the First Amendment, [plaintiff] must show that (1) [he] engaged in protected speech on a

23  matter of public concern; (2) . . . defendants took an 'adverse employment action' against [him];

24  and (3) [his] speech was a 'substantial or motivating' factor" for the adverse action.); see also

25  Allen v. Wright, 468 U.S. 737, 755 (1984) (holding parents lack standing to challenge IRS

26  procedures allowing racially discriminatory schools to have exempt status on the basis of

1    "stigmatizing injury often caused by racial discrimination" because "such injury accords a basis

2    for standing only to 'those persons who are personally denied equal treatment' by the challenged

3    discriminatory conduct"); Jones v. Beverly Hills Unified School Dist., No. WD CV 08-7201-

4    JFW (PJW), 2010 WL 1222016, at *4 n.8 (C.D. Cal. Mar. 7, 2010) (concluding that parent did

5    not have standing to bring retaliation claim based on deprivation of opportunity to watch

6    daughter play basketball and suffering from disappointment of daughter not making the team);

7    Harry A. v. Duncan, 351 F. Supp.2d 1060, 1068 (D. Mont. 2005) (noting that case law does "not

8    provide constitutional protection from any state action that has the ultimate effect of disturbing

9    the tranquility of the parent-child relationship.  If they did, one can imagine endless claims

10   brought under § 1983, given the emotional immaturity of many teenagers and the frequently

11   grating interactions between high school officials and students."); Morgan v. City of New York,

12   166 F. Supp.2d 817, 819 (S.D. N.Y. 2001) (granting motion to dismiss parent's complaint

13   brought pursuant to § 1983 because there was no indication that the parent "suffered any harm

14   other than emotional distress due to the alleged discrimination against her daughter."); Natriello

15   v. Flynn, 837 F. Supp. 17, 19 (D. Mass. 1993) ("Therefore, only the person toward whom the

16   state action was directed, and not those incidentally affected may maintain a § 1983 claim.").

17   IV.  Equal Protection

18           The Equal Protection Clause requires that persons who are similarly situated be

19   treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An

20   equal protection claim may be established in two ways.  First, such a claim may be established by

21   alleging and proving facts showing that the defendant has intentionally discriminated on the basis

22   of the plaintiff's membership in a protected class.  See, e.g., Lee v. City of Los Angeles, 250 F.3d

23   668, 686 (9th Cir. 2001).  Alternatively, an equal protection claim may arise where similarly

24   situated individuals are intentionally treated differently without a rational relationship to a

25   legitimate state purpose.  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  In

26   dismissing plaintiff's first amended complaint with leave to amend, the court advised plaintiff of

1  these elements of an equal protection claim.  Nonetheless, in his second amended complaint

2  plaintiff has failed to allege the elements of an equal protection claim plainly or succinctly.

3         In this regard, plaintiff alleges in his second amended complaint that he was

4  intentionally discriminated against based on his membership in a protected class.  (Sec. Am.

5  Compl. (Doc. No. 44-1) at 14.)  This conclusory allegation, however, is not followed up by any

6  explanation or discussion of precisely how it is that plaintiff is a member of a protected class.

7  See Barren v. Harrington, 152 F.3d 1193, 1195 (9th Cir. 1998) (affirming dismissal of third

8  amended complaint's equal protection claim because plaintiff "has not demonstrated that he is a

9  member of a protected class.")  In a similarly conclusory manner, the second amended complaint

10  alleges that plaintiff was deprived "Equal Protection of the Law" because plaintiff gave the

11  Board and District a complaint that quoted the applicable law and yet the Board and the District

12  "knowingly acquiesced to its continuance."  (Sec. Am. Compl. (Doc. No. 44-1) at 22.)

13         Morever, the second amended complaint also incorrectly conflates plaintiff's

14  equal protection claim and his Title IX claim, asserting that because plaintiff was discriminated

15  against for his "advocacy of a protected class," he has "every right to Equal Protection of the Law

16  no differently than any other Title IX Claim, which is allowed redress under the Fourteenth

17  Amendment Equal Protection" Clause.  (Id. at 7, 13.)  See generally Fitzgerald v. Barnstable

18  School Committee, 555 U.S. 246, 257 (2009) ("Even where particular activities and particular

19  defendants are subject to both Title IX and the Equal Protection Clause, the standards for

20  establishing liability may not be wholly congruent.").

21         Accordingly, for the reasons stated above, the second amended complaint fails to

22  allege the necessary elements of an Equal Protection claim.

23  V.  Due Process

24         The Due Process Clause of the Fourteenth Amendment provides, "No State shall

25  . . . deprive any person of life, liberty, or property, without due process of law."  U.S.

26  CONSTITUTION, AMEND. XIV § 1.  This clause guarantees both procedural and substantive due

1   process, protecting individuals against the deprivation of a liberty or property interest by the

2   government.  "A substantive due process inquiry focuses on 'what' the government has done,"

3   while a procedural due process analysis focuses upon "'how and when' the government did it."

4   Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990).  "A § 1983 claim based upon procedural

5   due process has three elements:  (1) a liberty or property interest protected by the Constitution;

6   (2) a deprivation of the interest by the government, and (3) lack of process.  Portman v. County

7   of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).  On the other hand, "[i]n order to establish a

8   constitutional violation based on substantive due process, a plaintiff must show both a

9   deprivation of liberty and conscience-shocking behavior by the government."  Brittain v. Hansen,

10  451 F.3d 982, 991 (9th Cir. 2006).

11          In dismissing the first amended complaint with leave to amend, the court advised

12  plaintiff of the distinctions between, and the elements of, a substantive Due Process claim and a

13  procedural Due Process claim.  Nonetheless, in his second amended complaint plaintiff fails to

14  state whether he is attempting to allege a substantive Due Process claim or a procedural Due

15  Process claim.  Morever, as noted above, in order to state a substantive or a procedural due

16  process claim, plaintiff must allege and prove that he was deprived of an interest protected by the

17  Due Process Clause.  See Johnson v. Rancho Santiago Community College Dist., 623 F.3d 1011,

18  1029 (9th Cir. 2010); Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir. 2008); Hynes v.

19  Squillace, 143 F.3d 653, 658 (2nd Cir. 1998).  In his second amended complaint, however,

20  plaintiff fails to identify a protected property or liberty interest that he was deprived of and fails

21  to allege conscious-shocking behavior on the part of any named defendant.

22          The second amended complaint does, however, allege that plaintiff "spoke with

23  Dr. Dixon" after plaintiff's daughter was not allowed to participate at cheer camp.  (Sec. Am.

24  Compl. (Doc. No. 44-1) at 12-13.)  Defendant Principal Dixon informed plaintiff that he would

25  be conducting an investigation.  (Id. at 13.)  Dixon's investigation found no sign of differential

26  treatment of plaintiff's daughter at the cheer camp.  (Id.)  Principal Dixon, however, did not

1   interview plaintiff's daughter prior to completing his investigation.  (<u>Id.</u>)  In this regard, plaintiff

2   alleges that Principal Dixon violated plaintiff's "Due Process Right" by "[d]enying my complaint

3   a proper investigation" resulting in the "deprivation" of plaintiff's "dignity by public

4   humiliation."  (<u>Id.</u> at 14.)  Moreover, Superintendent Godwin later denied plaintiff's request to

5   discuss Principal Dixon's investigation, further humiliating plaintiff.  (<u>Id.</u> at 15.)

6         "An injury to reputation alone is not sufficient to establish a deprivation of a

7   liberty interest protected by the Constitution."  <u>Pacific Marine Center, Inc. v. Silva</u>, 809 F.

8   Supp.2d 1266, 1290 (E.D. Cal. 2011).  Instead, "the injury must be loss of a right secured by the

9   Constitution or federal law."  <u>Escamilla v. City of Santa Ana</u>, 796 F.2d 266, 268 (9th Cir. 1986).

10   In this regard, plaintiff's second amended complaint fails to identify how defendant Principal

11   Dixon's failure to interview plaintiff's daughter deprived plaintiff of a right secured by the

12   Constitution or federal law.  <u>See</u> <u>Gomez v. Whitney</u>, 757 F.2d 1005, 1006 (9th Cir. 1985) ("[W]e

13   can find no instance where the courts have recognized inadequate investigation as sufficient to

14   state a civil rights claim unless there was another recognized constitutional right involved.");

15   <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1079 (8th Cir. 1996) ("She made no showing that the alleged

16   failure to investigate was on account of her gender so the claim does not implicate equal

17   protection."); <u>Gini v. Las Vegas Metro. Police Dep't</u>, 40 F.3d 1041, 1045 (9th Cir. 1994) ("The

18   police have no affirmative obligation to investigate a crime in a particular way or to protect one

19   citizen from another even when one citizen deprives the other of liberty of property."); <u>see</u> <u>also</u>

20   <u>Thompson v. Sosa</u>, 265 Fed. Appx. 544-45 (9th Cir. 2008) ("The district court properly

21   dismissed Thompson's claims against defendant FBI Agent Sellers because Thompson failed to

22   state facts showing that Sellers' allegedly inadequate investigation infringed a protected

23   constitutional right.")[8]

24   /////

25

26        [8]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

1        The second amended complaint also alleges that in January of 2009, plaintiff

2   "requested a Title IX Retaliation investigation" from the Board and that those defendants knew

3   plaintiff "had been denied Due Process and knowingly acquiesced in its continuance." (Sec. Am.

4   Compl. (Doc. No. 44-1) at 23.)  It is entirely unclear from the allegations of the second amended

5   complaint, however, how the Board's response, if any, to plaintiff's Title IX complaint

6   implicates plaintiff's right to due process.  See Fitzgerald, 555 U.S. at 255-56 ("Title IX has no

7   administrative exhaustion requirement and no notice provisions.  Under its implied private right

8   of action, plaintiffs can file directly in court . . . and can obtain the full range of remedies . . .").

9        Accordingly, plaintiff's second amended complaint also fails to allege the

10  necessary elements of a cognizable Due Process Clause claim.

11  VI.  Title IX

12       Title IX provides that "[n]o person in the United States shall, on the basis of sex,

13  be excluded from participation in, be denied the benefits of, or be subjected to discrimination

14  under any education program or activity receiving federal financial assistance."  20 U.S.C. §

15  1681(a).  This means that schools receiving federal funds are required to provide equal

16  opportunity for male and female athletes.  34 C.F.R. § 106.41(c).  There are two components to

17  Title IX's equal opportunity requirement:  "effective accommodation" and "equal treatment."[9]

18  42 C.F.R. § 106.41(c)(1), (2)-(10); Mansourian v. Regents of Univ. Of Cal., 602 F.3d 957, 965

19  (9th Cir. 2010).  "Effective accommodation claims thus concern the opportunity to participate in

20  athletics, while equal treatment claims allege sex-based differences in the schedules, equipment,

21  coaching, and other factors affecting participants in athletics."  Mansourian, 602 F.3d at 965.

22  /////

23  

24     [9]  The Court defers to the U.S. Department of Education's regulations governing the implementation of Title IX.  See Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 843-44 (1984); Mansourian v. Regents of Univ. Of Cal., 602 F.3d 957, 965 n.9 (9th Cir.

25  2010; Cohen v. Brown Univ., 991 F.2d 888, 895 (1st Cir. 1993) ("The degree of deference is particularly high in Title IX cases because Congress explicitly delegated to the agency the task of

26  prescribing standards for athletic programs under Title IX.").

1       Title IX also permits a private right of action that "encompasses suits for

2  retaliation because retaliation falls within the statute's prohibition of intentional discrimination

3  on the basis of sex." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 178 (2005).

4  Specifically, the Supreme Court has held that "[r]etaliation against a person because that person

5  has complained of sex discrimination is another form of intentional sex discrimination

6  encompassed by Title IX's private cause of action.  Retaliation is, by definition, an intentional

7  act.  It is a form of 'discrimination' because the complainant is being subject to differential

8  treatment." Jackson, 544 U.S. at 173.  The elements of a prima face case of Title IX retaliation

9  are (a) that plaintiff was engaged in protected activity, (b) that plaintiff suffered an adverse

10  action, and (c) that there was a causal link between the two.  Emeldi v. University of Oregon, 698

11  F.3d 715, 724 (9th Cir. 2012).

12       Here, plaintiff's second amended complaint alleges a claim for Title IX retaliation

13  against the Folsom Cordova School District.  (Sec. Am. Compl. (Doc. No. 44-1) at 1.)  With

14  respect to the first element of a prima face case of retaliation, the second amended complaint

15  alleges that plaintiff was retaliated against for filing a Title IX complaint with the California

16  Department of Education.  (Id. at 7.)  In this regard, the second amended complaint alleges that

17  plaintiff engaged in a protected activity.  See Jackson, 544 U.S. at 173-74.

18       With respect to the second element of a prima face case of retaliation, the second

19  amended complaint alleges that plaintiff suffered an adverse action because he "was forced to

20  watch [his] daughter be punished in retaliation" for his filing a Title IX complaint.  (Sec. Am.

21  Compl. (Doc. No. 44-1) at 8.)  As noted above, in his second amended complaint plaintiff

22  provides a lengthy recounting of how his daughter was not allowed to compete for a position on

23  the cheerleading squad, was allowed limited practice time and ultimately quit cheerleading in

24  response to defendants' alleged mistreatment of her.  However, as noted above, the second

25  amended complaint fails to allege that plaintiff himself suffered any adverse action at the hands

26  of any named defendant.

1    The second amended complaint fails to allege the elements of a prima face case of

2 Title IX retaliation.  See Jackson, 544 U.S. at 184 (stating that to prevail on a Title IX retaliation

3 claim the plaintiff must prove that he was retaliated against because he complained of sex

4 discrimination.); Emeldi, 698 F.3d at 725 ("The second requirement of a prima facie case of

5 retaliation is that the plaintiff suffered an adverse action."); Jones v. Beverly Hills Unified

6 School Dist., No. WD CV 08-7201-JFW (PJW), 2010 WL 1222016, at *4 (C.D. Cal. Mar. 24,

7 2010) (dismissing parent's Title IX retaliation claim because the claim was "based on retaliation

8 directed at her daughter, not her, i.e., [daughter] did not make the girls' basketball team because

9 [parent] complained."); cf. Jackson, 544 U.S. at 171-79 (holding that high school basketball

10 coach who was fired for complaining that the girls' team was not treated as well as boys' team

11 had standing to bring retaliation claim under Title IX because he had allegedly suffered the

12 impact of retaliation); Maynard v. City of San Jose, 37 F.3d 1396, 1403 (9th Cir. 1994)

13 (concluding that a white male could bring a retaliation claim under 42 U.S.C. § 1983 where he

14 alleged that he was demoted and eventually fired for complaining about discrimination against

15 minority applicants because he was "not suing on behalf of anyone else," but, rather, "assert[ing]

16 his own right to be free from retaliation").

17                                    CONCLUSION

18    For all the reasons set forth above, plaintiff's second amended complaint should

19 be dismissed.  The undersigned has carefully considered whether plaintiff could file a third

20 amended complaint that states a cognizable claim that would not be subject to dismissal.  "Valid

21 reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility."

22 California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir.

23 1988).  See also Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276,

24 1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely given, the court does not

25 have to allow futile amendments).  In light of the deficiencies in the second amended complaint

26 noted above, and plaintiff's failure to successfully amend his complaint when provided the

1    opportunity to do so, the court finds that it would be futile to grant plaintiff further leave to

2    amend.

3                      Accordingly, IT IS HEREBY RECOMMENDED that:

4                      1.  Defendants' May 17, 2012 motion to dismiss (Doc. No. 47) be granted;

5                      2.  Plaintiff's April 27, 2012 second amended complaint (Doc. No. 44) be

6    dismissed without leave to amend; and

7                      3.  This action be closed.

8                      These findings and recommendations are submitted to the United States District

9    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

10   days after being served with these findings and recommendations, any party may file written

11   objections with the court and serve a copy on all parties.  Such a document should be captioned

12   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

13   shall be served and filed within seven days after service of the objections.  The parties are

14   advised that failure to file objections within the specified time may waive the right to appeal the

15   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

16   DATED: January 22, 2013.

17

18   _____

19   DALE A. DROZD
     UNITED STATES MAGISTRATE JUDGE

20   DAD:6
     Ddad1\orders.prose\davis1242.mtd2.f&rs

21

22

23

24

25

26